IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY L. PAYTON, | ) | CASE NO. 3:12-CV-00476 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| KIMBERLY CLIPPER, Warden. | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Jeffery L. Payton ("Petitioner" or "Payton") filed this habeas corpus action pursuant to 28 U.S.C. § 2254 on February 28, 2012.  Doc. 1.  Payton challenges the constitutionality of his sentence arising out of two cases:  *State of Ohio v. Jeffrey L. Payton,* Case Nos. 2008CR611 ("2008 case") and 2009CR047 ("2009 case") (Erie County).  In the 2008 case, Payton entered a plea of guilty to possession of marijuana, preparation of crack cocaine, and possession of crack cocaine.  Doc. 6-1, p. 201.[1]  In the 2009 case, Payton entered a plea of guilty to possession of cocaine and crack cocaine.  Id.  The trial court imposed a total sentence of imprisonment for both cases of 17 years and 11 months.  Id.

On February 28, 2010, Payton filed a petition for writ of habeas corpus setting forth five grounds for relief.  Doc. 1, pp. 5-12.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  For the reasons set forth below, the undersigned recommends that Payton's petition for writ of habeas corpus (Doc. 1) be **DENIED**.

---

[1] Doc. page citations are to Doc. page numbers listed at the top of each Doc. page.

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009). The Erie County Court of Appeals, Sixth Appellate District of Ohio, set forth the facts, including the procedural history, underlying Payton's conviction as follows:[2]

{¶ 6} This appeal arises out of two cases in the trial court. In case number 2008-CR-611 (the "2008 case"), the Erie County Grand Jury issued a ten count indictment against appellant. These charges arose out of a September 2, 2008 incident where appellant allegedly prepared and possessed LSD, cocaine, marijuana, and crack cocaine for sale while in the presence of a juvenile. In case number 2009-CR-047 (the "2009 case"), the Erie County Grand Jury issued a seven count indictment against appellant. The charges arose out of an incident on July 11, 2008, when appellant allegedly restrained someone's liberty; an incident on October 14, 2008, when appellant allegedly restrained the liberty of and caused serious harm to another person; and an incident on December 1, 2008, when appellant allegedly prepared and possessed crack cocaine and cocaine for sale to an intermediate buyer.

{¶ 7} A plea offer was proposed by the state. In exchange for appellant's promise to plead guilty to certain offenses in each case, the state agreed to a recommended sentence of approximately ten years. Following the denial of appellant's motion to suppress, appellant agreed to enter into the plea agreement. On August 10, 2009, appellant entered a guilty plea in the 2008 case to charges of possession of marijuana, preparation of crack cocaine, and possession of crack cocaine. Appellant also entered a guilty plea in the 2009 case to possession of cocaine and crack cocaine. Appellant acknowledged that the maximum prison sentence he faced was 19 years, of which three years were mandatory in the 2008 case and a maximum term of imprisonment of ten years, with a mandatory term of one year in the 2009 case. The prosecution agreed to recommend appellant serve nine years and 11 months with six years mandatory in both cases, with no opposition to judicial release after seven years. At the plea hearing, the court informed appellant the court "will give great deference to the fact that your counsel and the state [are] recommending this [plea agreement], but you have the opportunity to blow this by getting in some trouble between now and then, so don't do that, okay?" To which appellant replied he would not get in trouble and that he had no further questions.

---

[2] The facts are taken from the Sixth District Court of Appeals' decision *State v. Payton*, 2010-Ohio-5178 (Ohio Ct. App. Feb. 14, 2014). Payton has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

{¶ 8} Appellant did not appear for his sentencing hearing. After appellant was arrested, a sentencing hearing was held on November 30, 2009, and two sentencing judgments were rendered on December 3, 2009, and corrected by a January 15, 2010 judgment in the 2008 case. Appellant's counsel suggested at the sentencing hearing that appellant had probably not appeared at the original hearing because he was frightened by the thought of a long imprisonment. The court found appellant guilty of the charges to which he had entered a guilty plea. In the 2008 case, the court imposed a definite sentence of 11 months as to one count and nine mandatory years for the remaining two counts that merged for purposes of sentencing. The sentences imposed were to be served consecutively. In the 2009 case, the trial court found appellant guilty of the two counts to which he had pled guilty. The court sentenced appellant to serve four years of mandatory imprisonment as to each count, to be served consecutively to each other and consecutive to the sentence imposed in the 2008 case, for a total sentence of imprisonment for 17 years and 11 months. Appellant appeals from both sentencing judgments and the two appeals have been consolidated for our review.

*State v. Payton*, 2010-Ohio-5178, *1-*2.

## II. Procedural Background

### A.  Plea Hearing

During his August 10, 2009, plea hearing the following exchange occurred between the trial court and Payton:

> COURT: Make sure you abide by all your bond conditions. So don't violate your, your - - any of your bond conditions. Make sure you stay out of any legal trouble. So don't get arrested for any disorderlies or menacings or anything like that and then make sure you show up at that date and time in August, okay –
>
> MR. PAYTON: Okay.
>
> COURT: -- that I gave you. Now, should you fail to do any one of those things, do you realize the Court could cancel your bond and take you into custody?
>
> MR. PAYTON: Yes.
>
> COURT: Okay. Now, you're hoping to get this sentence on August 31st, and the Court will give great deference to the fact that your counsel and the State is recommending this, but you have the opportunity to blow this by getting in some trouble between now

and then, so don't do that, okay?

MR. PAYTON: I'm not –

COURT: Don't take advantage of that opportunity. Make sure you behave yourself, okay?

MR. PAYTON: Yep.

COURT: Do you have any questions of this Court at all?

MR. PAYTON: No, sir.

Doc. 7-1, pp. 33-34.

As set forth in the Court of Appeals' opinion quoted above, Payton failed to appear for his August 2009 sentencing hearing.  Doc. 6-1, Ex. 15, p. 211.  He was later arrested and extradited and was sentenced on November 30, 2009, as set forth above.  Id.

**B.  Direct Appeal**

On December 23, 2009, Payton filed a Notice of Appeal of his conviction and sentence to the Sixth District Court of Appeals.  Doc. 6-1, Ex. 11.  On January 20, 2010, the appellate court consolidated his 2008 and 2009 cases for purposes of the appeal.  Doc. 6-1, Ex. 12.  In Payton's Appellate Brief, he presented the following four assignments of error:

> 1. The state's breach of the plea agreement entered into between Mr. Payton and the prosecutor render [sic] that plea involuntary and its acceptance plain error.
>
> 2. Mr. Payton is entitled to specifically enforce the plea agreement that the trial court explicity [sic] accepted.
>
> 3. The trial court improperly sentenced Mr. Payton when it imposed consecutive sentences without stating findings or reasons supporting its sentencing decision.
>
> 4. Mr. Payton was deprived of his constitutionally guaranteed right to the effective assistance of counsel by trial counsel's deficient performance at sentencing.

Doc. 6-1, Ex. 13, p. 51.   On May 10, 2010, the State filed a responsive brief.  Doc. 6-1, Ex. 14.

On October 22, 2010, the Sixth District issued its opinion affirming the judgment of the trial

court.  Doc. 6-1, Ex. 15.

Payton timely appealed the appellate court decision to the Ohio Supreme Court on

December 6, 2010.  Doc. 6-1, Ex. 16.  In his Memorandum in Support of Jurisdiction, Payton

raised the following sole proposition of law:

> A guilty plea is rendered involuntary when the court, without notice to the Defendant,
> disregards the plea agreement in which the court was a party and proceeds to sentence
> beyond the plea's agreed sentence.

Doc. 6-1, Ex. 17, p. 223.   The state filed a Memorandum in Opposition.  Doc. 6-1, Ex. 18.  On

March 2, 2011, the Ohio Supreme Court denied Payton leave to appeal and dismissed the appeal

as not involving a substantial constitutional question.  Doc. 6-2, Ex. 19.

### C.  Federal Habeas Corpus

On February 17, 2012, Payton *pro se* signed the instant petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Doc. 1.  In his petition, Payton raises the following five grounds

for relief:

> **GROUND ONE:** The State unconstitutionally incarcerated Mr. Payton, by
> violating his rights to a voluntary plea that was agreed between the State and Mr.
> Payton with-standing a Third party (THE JUDGE), who is not permitted to
> negotiate a plea les[3] the plea becomes cohersive, and involuntarily,
> unintelligently, unwillingly given.
>
> **Supporting Facts:** As stated The Plea Agreement was in violation of Crim.
> Rule 11.  Mr. Payton was violated by not entering into a plea knowingly, willingly,
> intelligently since the agreed plea between the State and Mr. Payton was not upheld
> and He Mr. Payton was not on notice by any members of the contract that the
> offer, the arrangement agreed to had changed to Mr. Payton's detriment. The
> State still got what they contracted to receive how-ever Mr. Payton did not recive
> the benifitt of his tendered plea, making the contract null and void due
> to the conditions of the plea changing. The state did not place the reasons they

---

[3] The undersigned has provided Payton's Grounds and Supporting Facts verbatim and has not corrected any spelling
or grammatical errors.

changed the agreement on the record one can only surmise that the State had no
intentions in fulfilling the greed contrct, since no notice as to the conditions
changing that the party to recive the benifitts of the plea is the state as
the plea was still tendered when the state recived what was brokered for Mr.
Payton not taking the case to trial.

**GROUND TWO:** The State violated the plea agreement that was specifically
agreed to by Mr. Payton and the State and the State /courts explicitly accepted.

**Supporting Facts:** The State did not up-hold there [sic] end of the
contract/plea agreement, Mr. Payton, in exchange for saving tax payer money,
time and resources agreed to plead guilty in exchange for saving tax payer money, time and
resources agreed to plead guilty to a certain amount of charges, Mr. Payton previous to
failing to come to his sentencing hearing had carried out his agreement by pleading guilty to
the charges agreed to, and thus carried out his end of the contract.

**GROUND THREE:** The State improperly sentenced Mr. Payton when it
imposed consecutive sentences without stating findings or reasons supporting it's
[sic] sentencing decision.

**GROUND FOUR:** Mr. Payton was deprived of his constitutionally guaranteed
rights to the effective assistance of counsel by trial counsel's deficient performance at
sentencing by not advising Mr. Payton to withdraw his plea, or the possibility of not
recieving [sic] the agreed plea and not advising the court that Mr. Payton was medicated and
due to diabetes illness was not coherent at the time of sentencing otherwise would not have
recieved [sic] such harsh treatment.

**Supporting Facts:** Mr. Payton was unable to protect his own interests due to
illness as state in MEMORANDUM IN SUPPORT THE courts were aware of
Mr. Payton's Mental issues Page #2, Mr. Payton was in fact at the mercy of his
trial counsel and the State who never even checked on his well being, the courts
violated Mr. Payton creating a substantial breach in any contract, being willing,
intelligent, knowingly entered into Mr. Payton was unable protect his own rights,
and to that end and Mr. Payton's rights to have effective assistance of counsel was
violated.

**GROUND FIVE:** Mr. Payton is adversely effected [sic] by the "new law"
which is senate bill 86 that should effect [sic] Mr. Payton's sentencing due to
being in "the pipeline" at the time of the law changing as this is a direct timely
appeal after proper appeals and decisions rendered.

**Supporting Facts:** Mr. Payton is adversely effected [sic] by the new
sentencing law the difference between crack cocaine, and cocaine as well as the
disparity inherently debated should allow for an "ex post facto" doctrine remedy
as this disparity causes Mr. Payton substantial hardship and punishment.

6

Doc. 1, pp. 5-12.

## III. Law

### A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA") apply to Payton's habeas petition because he filed it after the effective date of the AEDPA.  28 U.S.C. § 2254.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  A state court's adjudication only results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

### B.  Exhaustion and Procedural Default

Under the AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806

(quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when

determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.' " *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

### IV.  Claims Analysis

#### A.  Claims Overview

Payton sets forth five grounds for relief in his petition. Doc. 1, pp. 5-12.  Respondent argues that Payton's first and second grounds are without merit.  Doc. 6, pp. 17-22.  Respondent also argues that Payton's third, fourth, and fifth grounds are procedurally defaulted.  Id, pp. 12-14. For the reasons that follow, the undersigned agrees with Respondent and concludes that Payton's first and second grounds are without merit and Payton's third, fourth, and fifth grounds are procedurally defaulted.[4]  Thus, federal habeas relief should be denied.

#### B.  Ground One and Ground Two are without merit

Payton's first two habeas grounds challenge his guilty plea.  In Ground One, Payton asserts that, because he did not receive the sentence he previously bargained for, his plea was involuntary.  Doc. 1, p. 5.  Payton presented this claim to the Sixth District Court of Appeals in his first assignment of error (Doc. 6-1, pp. 55-58) and to the Ohio Supreme Court in his sole proposition of law (Doc. 6-1, pp. 223-24).  In Ground Two, he asserts that the State breached the plea agreement, which he says the state court "explicitly accepted."  Doc. 1, p. 7.  Payton presented this claim to the Sixth District Court of Appeals in his second assignment of error. Doc. 6-1, pp. 55-58.  On appeal to the Ohio Supreme Court, Payton arguably presented this claim in his sole proposition of law (Doc. 6-1, pp. 223-24).[5]  Respondent argues that both Ground One and Ground Two are without merit.

---

[4] Alternatively, Payton's fifth ground is without merit for the reasons discussed below.

[5] In his Memorandum in Support of Jurisdiction Payton did not explicitly say that the State breached the plea agreement.  Rather, Payton argued that the trial court promised a certain sentence which induced his plea and, since that sentence was not given, the plea was not voluntary.  Doc. 6-1, p. 224.  However, since a petition may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State (*See* §2254(b)(2)), the undersigned has reviewed the merits of this claim.

**Relevant Factual Summary.**  As set forth above, Payton, after entering into a plea agreement with the State in conjunction with both his 2008 and 2009 cases, failed to appear for his August 2009 sentencing hearing.  Doc. 6-1, pp. 210-11.  He was later arrested  and a sentencing hearing was held on November 30, 2009.  Id.  At the November 2009 sentencing hearing, the State informed the trial court that it interpreted Payton's failure to appear at the first sentencing hearing was a breach of the plea agreement and, therefore, the State was no longer required to comply with it.  Doc. 7-2, p. 13.  The State, which previously had agreed to recommend a sentence of 9 years and 11 months, then recommended that Payton receive the maximum sentence on the reduced charges, i.e., 29 years.  Id.   Payton did not object to the State's assertion at the sentencing hearing that he breached the plea agreement and has not disputed this issue on habeas review.  The trial judge sentenced Payton to a term of 17 years, 11 months.[6]  Id. at p. 18.

Payton appealed his sentence to the Ohio appellate court arguing that the State breached the plea agreement by not recommending the "agreed 'recommended' sentence" of 9 years, 11 months.[7]  Doc. 6-1, p. 55.  Payton asserted that the State's breach rendered his plea involuntary. Id.  The State filed an opposition to Payton's appeal arguing that it was relieved of its obligations under the plea agreement after Payton breached the agreement by failing to appear for sentencing.  Id. at p. 92.

The Sixth District court of appeals addressed these issues as follows:

{¶ 9} In his first and second assignments of error, appellant argues that the prosecution violated the plea agreement when it did not recommend the agreed-upon sentence. Therefore, appellant asserts that his guilty plea was not voluntary and acceptance of it by the court was

---

[6] The trial judge did not state that he issued Payton's sentence based upon his failure to appear at the sentencing hearing.  See Doc. 7-2, pp. 1-19.

[7] Payton also stated that the State breached its agreement not to oppose judicial release after he served seven years. Doc. 6-1, p. 55.

plain error or, in the alternative, that he is entitled to specific performance of the agreement upon remand. Furthermore, appellant argues that if he breached the plea agreement by not appearing for sentencing, the trial court should have given him the opportunity to withdraw his guilty plea.

{¶10} Appellee argues that while appellant entered his guilty plea pursuant to the plea agreement, he did not appear for sentencing. Therefore, the prosecution was no longer required to comply with the plea agreement and make the sentencing recommendation set forth in the plea agreement. We agree.

{¶ 11} "Plea agreements are contracts between the state and criminal defendants and are subject to contract-law principles." *State v. Netherland,* 6th Dist. No. 08CA3043, 2008-Ohio-7007, ¶ 37, reversed on other grounds in *In re Sexual Offender Reclassification Cases,* 126 Ohio St.3d 322, 933 N.E.2d 801, 2010-Ohio-3753, citing *State v. Adkins,* 161 Ohio App.3d 114, 829 N.E.2d 729, 2005-Ohio-2577. Therefore, a breach of the contract by the defendant relieves the prosecution of any obligations under the agreement. *State v. Netherland,* supra, and *State v. Adkins,* supra. The determination of whether the plea agreement has been breached is a matter left to the sound discretion of the court. *State v. Willis,* 6th Dist. No. E-05-026, 2005-Ohio-7002, ¶ 9, and *State v. McCartney,* 12th Dist. No. CA2005-03-008, 2005-Ohio-5627, ¶ 8 citing *State v. Mathews* (1982), 8 Ohio App.3d 145, 146, 456 N.E.2d 539. Failure of appellant to appear at the sentencing hearing is generally held to be a breach of the plea agreement. *State v. Milligan,* 3d Dist. No. 16-08-04, 2008-Ohio-4509, ¶ 16, and *State v. Adkins,* supra, at ¶ 7-8, 829 N.E.2d 729.

**\*3** {¶ 12} Neither the agreement nor the court must inform the defendant that failure to appear at sentencing constitutes a breach of the agreement. *Id.* at ¶ 8, 829 N.E.2d 729. Although some courts also consider what the parties reasonably understood at the time the defendant entered a guilty plea. *State v. Willis,* supra.

{¶ 13} Finally, because there is no absolute right to withdraw a guilty plea after conviction but prior to sentencing, *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715, a trial court has the discretion to determine whether a defendant shall be allowed to withdraw his plea after failing to appear for sentencing. Generally, courts find that it is not an abuse of discretion to deny the motion to withdraw under these circumstances. *State v. Adkins,* supra, at ¶ 16. Therefore, appellant cannot claim that he was prejudiced by his counsel's failure to move to withdraw the guilty plea under these circumstances. *Id.* at ¶ 16-18, 829 N.E.2d 729. The court owes no obligation to advise appellant that he could move to withdraw his guilty plea.

{¶ 14} In this case, appellant left the state and did not return for sentencing until after he was apprehended and extradited to Ohio. His counsel even stated at the sentencing hearing that he believed that appellant merely panicked at the thought of the sentence to which he had agreed. Furthermore, while not required to do so, the court warned appellant that the court would not necessarily accept the sentencing recommendations of the agreement if appellant got into further legal trouble. Appellant cannot now complain that he did not know that skipping out on his sentencing hearing would affect his sentence. Appellant has failed to

demonstrate that the trial court abused its discretion by finding that the plea agreement had been breached by appellant and that the prosecution was no longer bound by it. Furthermore, the court was not required to give appellant the opportunity to withdraw his plea. Appellant's first and second assignments of error are not well-taken.

*State v. Payton*, 2010-Ohio-5178.

**Law and Analysis.**  In order to obtain habeas relief under §2254(d), Payton must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of clearly established Federal law as determined by the U.S. Supreme Court ("contrary to clause"); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application clause").  28 U.S.C. § 2254(d).  For the reasons that follow, the state court's decision was not contrary to U.S. Supreme Court precedent and the state court did not unreasonably determine the facts in light of the evidence presented.

As recognized by the state court, plea agreements are to be interpreted and enforced using principles of contract law.  *Santobello v. New York* (1971)*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427*; *United States v. Robison,* 924 F.2d 612, 613 (6th Cir.19*91*)).  In *Santobello*, the Supreme Court held that, when a defendant is induced to plea bargain chiefly because of a prosecutor's promises, such promises must be fulfilled. *Id.*  The Sixth Circuit has interpreted *Santobello* to mean that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable under § 2254. *McPherson v. Barksdale,* 640 F.2d 780 (6th Cir.1981); *Bercheny v. Johnson*, 633 F.2d 473 (6th Cir.1980); *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir.19*84*).

However, the Supreme Court has never held that a criminal defendant who first breaches a plea agreement may nevertheless insist that the prosecution perform its part of the agreement.  *Riggins v. Lafler*, CIV. 06-CV-13285, 2009 WL 1298209 (E.D. Mich. May 8, 2009).  In *Rickets*,

14

the Supreme Court held a defendant's breach of the plea agreement removed the double jeopardy bar to prosecuting a higher charge. *Rickets v. Adamson,* 483 U.S. 1, 8, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (holding that the respondent's breach of the plea agreement removed the double jeopardy bar to prosecution for first-degree murder even though defendant had pleaded guilty to second-degree murder). Moreover, a breaching defendant forfeits any rights to enforce a plea agreement. *United States v. Bishop*, 306 F. App'x 934, 939 (6th Cir. 2009).[8] Although not argued in *Puckett*, the Supreme Court implied that a defendant's ongoing criminal activity between his plea and sentencing might excuse the Government from its obligation under the plea agreement to recommend a reduced sentence. *Puckett v. United States*, 556 U.S. 129, 146, n. 2, 129 S. Ct. 1423, 1435, 173 L. Ed. 2d 266 (2009) ("Indeed, in this case the Government might well have argued that it was excused from its obligation to assert 'demonstrated acceptance of responsibility' because Puckett's ongoing criminal conduct hindered performance. See 13 Williston § 39.3 (4th ed.2000). That argument might have convinced us had it been pressed, but the Government conceded the breach, and we analyze the case as it comes to us.")

Here, the state court found that Payton's failure to appear at sentencing constituted a breach of the agreement.[9] *State v. Payton*, 2010-Ohio-5178, ¶12. Petitioner does not dispute that

---

[8] *See also, e.g., United States v. Cimino,* 381 F.3d 124, 128 (2d Cir. 2004) ("When a defendant breaches his plea agreement, the Government has the option to either seek specific performance of the agreement or treat it as unenforceable."); *United States v. Kelly,* 337 F.3d 897, 901 (7th Cir.2003) ("[A] defendant's substantial breach of an unambiguous term of a plea agreement frees the government to rescind the deal."); *United States v. Sandoval-Lopez,* 122 F.3d 797, 800 (9th Cir.1997) ("Where a defendant has breached a plea agreement, courts have found the government to be free from its obligations."); *United States v. Ballis,* 28 F.3d 1399, 1409 (5th Cir.1994) ("[I]f a defendant materially breaches his commitments under a plea agreement, the government is released from its obligations under that compact ...."); *United States v. West,* 2 F.3d 66, 69-70 (4th Cir.1993) (defendant's breach of plea agreement "relieves the government of its obligation to conform to the agreement's terms.").

[9] The state court decision that Payton's agreement to appear is implicit in the plea agreement is consistent with federal cases which have found the same. *See United States v. Munoz,* 718 F.3d 726, 730 (7th Cir. 2013) ("Failure to appear for sentencing violates the conditions of pretrial release and one of the fundamental premises underlying any plea agreement: a willingness to face the consequences of admitted criminal conduct...[Thus,] a defendant breaches a plea agreement when he absconds before sentencing even if the agreement is silent on the subject.");

he breached the plea agreement.[10]  Applying basic contract principles, since Payton breached a term of the plea agreement and/or hindered performance of the Government by failing to appear at his initial sentencing, the agreement was no longer binding on the other party.  Based on the above, the state court's determination did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law and the state court's decision was not based upon an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).   Accordingly, Payton's Ground Two is without merit.

As to Ground One, Payton argues that his plea became "cohersive [sic],…involuntarily, unintelligently, and unwillingly given" because the State violated "his rights to a voluntary plea that was agreed between the State and Mr. Payton with-standing a Third party (THE JUDGE)." Doc 1, p. 5.  A prisoner who has entered a guilty plea at trial and who later attempts to attack his sentence collaterally through a federal habeas action is limited to raising only the issue of whether his guilty plea was knowing and voluntary.  *United States v. Broce,*  488 U.S. 563, 569, 109 S. Ct. 757, 762, 102 L. Ed. 2d 927 (1989); *Brady v. United States*, 397 U.S. 742 (1970); *see also Baker v. United States*, 781 F.2d 85 (6th Cir. 1986).  In order for a plea of guilty to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution,* 927 F.2d 256, 257 (6th Cir.19*91); *Shanks,* 387 F.Supp.2d at 749. The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton,* 17 F.3d 151, 154 (6th Cir.19*94). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of

---

*United States v. David,* 58 F.3d 113, 114–15 (4th Cir.1995) ( "implicit in every such plea agreement is the defendant's obligation to appear for sentencing.")

[10] Instead, Payton acknowledges that the trial court warned him not to get into any more trouble while awaiting sentencing and Payton argues he "did not get into anymore trouble."  Doc. 12-1, p. 8.

the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir.1993). A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *Shanks,* 387 F.Supp.2d at 749. It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson,* 467 U.S. 504, 508-09, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

The Supreme Court has stated, "It is entirely clear that a breach [of a plea agreement] does not cause the guilty plea, when entered, to have been unknowing or involuntary." *Puckett*, 556 U.S. at 137. Thus, even if the State did breach the plea agreement, and Payton's breach did not release the State from its obligations under the agreement, Payton's guilty plea would not be rendered unknowing or involuntary.

For a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence that could be imposed. *King v. Dutton,* 17 F.3d 151, 154 (6th Cir. 1994); *Hart v. Marion Correctional Institution,* 927 F.2d 256, 259 (6th Cir.), *cert. denied,* 502 U.S. 816, 112 S.Ct. 70, 116 L.Ed.2d 44 (1991). Although the defendant must be apprised of such "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea. *King,* 17 F.3d at 153; *see also El–Nobani v. United States,* 287 F.3d 417, 421 (6th Cir.2002); *Brown v. Perini,* 718 F.2d 784, 788–89 (6th Cir.1983).

Here, the trial court informed Payton that the maximum sentence he could receive was 29 years in prison. Doc. 7-1, pp. 17-19. The trial court also advised Payton that it was not bound to the sentence recommended in the plea agreement. Id. at p. 16. Further, the trial judge stated that he would give great deference to the fact that the parties' plea agreement recommended a

sentence of 9 years, 11 months but advised Payton he had "the opportunity to blow this by getting in some trouble between now and then."  Doc. 7-1, p. 34.

Based on the above, Petitioner has failed to demonstrate that his guilty plea was unknowing and involuntary.  Therefore, the state court's determination did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law and the state court's decision was not based upon an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).  Thus, his first ground is without merit.

**C.  Grounds Three, Four, and Five are procedurally defaulted**

Respondent argues that Payton's third, fourth, and fifth habeas grounds are procedurally defaulted due to his failure to fairly present them to the Ohio courts.  Doc. 6, p. 8.  Petitioner does not dispute that his third, fourth, and fifth habeas grounds are unexhausted and indicates that, if these grounds will "cause a delay or dismissal," he would like them excluded from review.  Doc. 12-1, p. 7.  Alternatively, the undersigned has reviewed Ground Five and found it to be without merit.

**Ground Three.**  In Payton's third ground he argues that the state court improperly sentenced him when it imposed consecutive sentences without stating findings or reasons in support.  Doc. 1, p. 8.  Payton presented this issue to the Sixth District Court of Appeals on direct review in his third assignment of error.  Doc. 6-1, Ex. 13, p. 51.  Payton did not, however, continue to pursue this issue to the Ohio Supreme Court on discretionary review.  See Doc. 6-1, Ex. 17.  Respondent argues that, "assuming *arguendo* that this ground is even cognizable, Payton's Third ground has…been defaulted due to his failure to fairly present it to all levels of the Ohio Appellate Courts."  Doc. 6, p. 13.

A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In this case, Payton procedurally defaulted his challenge to the application of consecutive sentences. Although he raised the issue in his appeal to the Sixth District Court of Appeals, he failed to raise the issue to the Ohio Supreme Court in pursuing direct review. His claim is now procedurally defaulted because he would be barred from asserting this claim due to the doctrine of *res judicata*. *Curtis v. Warden, Marion Corr. Inst.*, 1:12-CV-260, 2013 WL 5524604 (S.D. Ohio Oct. 4, 2013) *report and recommendation adopted,* 1:12CV260 WOB-KLL, 2014 WL 2048132 (S.D. Ohio May 19, 2014) (finding a claim procedurally defaulted when petitioner failed to assert the claim on appeal to the Ohio Supreme Court); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.' ").[11]

To overcome a procedural bar, Payton must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or must show that there will be a fundamental miscarriage of justice if the claims are not considered, i.e., actual innocence. *Coleman*, 501 U.S. at 750. Payton does not argue or demonstrate cause or prejudice for his

---

[11] Ground Three is also procedurally defaulted under *Maupin*. Under Ohio law, the first and second *Maupin* factors are met. *See Smith v. Anderson,* 104 F.Supp.2d 773, 794 (S.D.Ohio 2000) ("The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of *res judicata*.") (citing *Cole,* 443 N.E.2d at 171). The third *Maupin* factor is also met because Ohio's doctrine of *res judicata* as a procedural bar is regularly applied by Ohio courts. *See Smith,* 104 F.Supp.2d at 793 (finding that Ohio's doctrine of *res judicata* as a procedural bar was an independent and adequate state ground under *Maupin* inasmuch as the Ohio appellate courts "do not ignore or arbitrarily deny Ohio's procedural bars, including the *Perry* rule, on a regular basis").

procedural default and does not argue that he is actually innocent.[12] Accordingly, Payton's third ground for Relief is procedurally defaulted.

**Ground Four.**   In Payton's fourth Ground he argues that:

> Mr. Payton was deprived of his constitutionally guaranteed
> rights to the effective assistance of counsel by trial counsel's deficient
> performance at sentencing by not advising Mr. Payton to withdraw his plea, or the
> possibility of not recieving [sic] the agreed plea and not advising the court that
> Mr. Payton was medicated and due to diabetes illness was not coherent at the time
> of sentencing otherwise would not have recieved [sic] such harsh treatment.

In his Fourth Assignment of Error to the Sixth District Court of Appeals, Payton argued that he was denied effective assistance of counsel because his counsel did not "challenge the State's failure to abide by the terms and conditions of [his] properly executed plea agreement and…[failed] to object to the State's statements made at [his] sentencing hearing."  Doc. 6-1, Ex. 13, p. 60.  Accordingly, it is not clear that Payton presented any part of his Ground Four to the Sixth District Court of Appeals.  However, even assuming arguendo that the ineffective assistance argument presented in Payton's appellate brief to the Ohio court of appeals contained part of what is contained in his instant fourth ground, he failed to continue to pursue any ineffective assistance of counsel claim to the Ohio Supreme Court.  Thus, for the same reasons discussed above with respect to Ground Three, Payton's ineffective assistance of counsel claims raised in Ground Four are procedurally defaulted because he failed to fairly present any of them to the Ohio Supreme Court.[13] Payton does not argue or demonstrate cause or prejudice for his procedural default and does not argue that he is actually innocent. Accordingly, Payton's Fourth Ground for Relief is procedurally defaulted.

---

[12] "Habeas petitioners…must present affirmative evidence or argument as to the precise cause and prejudice produced."  *Lundgren v. Mitchell*, 440 F.3d 754,764 (6th Cir. 2006).
[13] To the extent that Payton failed to present part or all of his Fourth Ground to the Sixth District, Payton's Fourth Ground is procedurally defaulted under the analysis set forth below in the review of Payton's Fifth Ground.

**Ground Five.**  In Payton's fifth ground he asserts that he was "adversely effected" by "senate bill 86" which was "in the pipeline" at the time of his sentencing.  Doc. 1, p. 12.  Payton notes that the new sentencing law eliminated the disparity between crack cocaine and cocaine.  Id.  This ground was clearly not raised in Payton's direct appeal or on discretionary review to the Ohio Supreme Court.  See Doc. 6-1, Exs. 13 & 17.

Ohio courts have set forth a default rule barring consideration of claims that should have been raised on direct appeal. *See Cole,* 443 N.E.2d 169, 171; *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104, 108 (1967). Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal. *See, e.g., State v. Lentz,* 70 Ohio St.3d 527, 639 N.E.2d 784, 785 (1994). The Sixth Circuit has held that this rule is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test. *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *Byrd v. Collins,* 209 F.3d 486, 521–22 (6th Cir. 2000)). Payton did not present this claim on direct appeal and the claim is now procedurally defaulted.  Payton does not argue or demonstrate cause or prejudice for his procedural default and does not argue that he is actually innocent.  Accordingly, Payton's fifth ground for relief is procedurally defaulted because it was not presented to the Ohio courts on direct appeal.

Alternatively, even if the Court were to determine this ground was not procedurally defaulted,[14] it is without merit.  Respondent notes that it was unable to find a  "senate bill 86" relative to Payton's case but believes he is referring to House Bill 86 ("H.B. 86"). Doc. 6, p. 27.  Respondent's interpretation appears to be correct.  Payton's supporting facts relative to Ground Five state that Senate Bill 86 is "a new sentencing law" which dealt with the difference and

---

[14] Payton argues that he was unable to raise his Fifth Ground on direct appeal because the law referenced in his Fifth Ground ("Senate Bill 86") was not effective at the time his direct appeal was finalized.  Doc. 1, pp. 12-13.

disparity between crack cocaine and cocaine. Doc. 1, p. 12.  H.B. 86, which became effective on September 30, 2011, eliminated the difference in criminal penalties between crack and powder cocaine, which are now both included in the definition of cocaine under Ohio Revised Code 2925.  CRIME VICTIMS--CIVIL RIGHTS--ACTIONS AND PROCEEDINGS, 2011 Ohio Laws File 29 (Am. Sub. H.B. 86); *State v. Bielecki*, 2012-Ohio-2124.

Payton entered pleas of guilty to possession of crack cocaine and possession of cocaine under R.C. 2925.11 in the 2009 case.  Doc. 7-1, pp. 7, 30-31.  In the 2008 case, Payton entered a plea of guilty to possession of crack cocaine under R.C. 2925.11 and a plea of guilty to preparation of crack cocaine of sale under R.C. 2925.03.  Doc. 7-1, pp. 3-4, 30-31. Payton was sentenced on November 30, 2009, in relation to these charges.  Doc. 7-2, pp. 3-18.

H.B. 86 did not apply to Payton because he was sentenced two years prior to the September 30, 2011, effective date and H.B. 86 does not apply retroactively.[15]  *State v. Bielecki, 2012-Ohio-2124,* ¶ 43 ("Section 3 of H.B. 86 contains the statement of specific legislative intent not to make the amendment retroactive."); *State v. Fields*, 2011-Ohio-6044 ¶10.  Section 3 of H.B.86 provides, "The amendments to sections 2925.01 * * * and 2925.11 of the Revised Code * * * that are made in this act apply to a person who commits an offense involving * * * cocaine * * * on or after the effective date of this act."  2011 Ohio Laws File 29 (Am. Sub. H.B. 86).

---

[15] Ohio courts have found that criminal defendants who, unlike Payton, were charged before the effective date of H.B. 86 but sentenced after that date were entitled to a reduction in their sentences under H.B. 86, and in some case, also to a reduction in the classifications of their crimes. *State v. Cornett*, 6th Dist. No. WD-12-046, 2013-Ohio-2367, ¶11 (citing *State v. Solomon,* 1st Dist. No. C–120044, 2012–Ohio–5755, 983 N.E.2d 872, ¶ 54 (classification reduced from fifth degree felony to fourth degree felony due to H.B. 86 amendments); *State v. Arnold,* 2nd Dist. No. 25044, 2012–Ohio–5786, ¶ 13 (charge reduced from felony of the fourth degree to felony of the third degree); *State v. Gillespie,* 5th Dist. No.2012–CA–6, 2012–Ohio–3485, 975 N.E.2d 492, ¶ 15 (amendments made by H.B. 86 applied to entitle defendant to be sentenced to a misdemeanor rather than a felony); *State v. Limoli,* 10th Dist. No. 11 AP–924, 2012–Ohio–4502, ¶ 66 (reversing trial court conviction in part due to operation of H.B. 86 reducing classification of crime); *State v. Cefalo,* 11th Dist. No.2011–L–163, 2012–Ohio–5594, ¶ 15 (fifth degree felony conviction reversed due to amendments to threshold levels made in H.B. 86 changing the crime to a misdemeanor of the first degree)).  Payton does not benefit from these cases because he was sentenced after the effective date of H.B. 86.

Payton appears to argue that he was adversely affected by H.B. 86 because it was "in the pipeline," though not effective, at the time of his sentencing. Presumably, Payton is arguing that he would have benefited by having H.B. 86 applied to his case; however, because Payton was sentenced before the effective date of H.B. 86 and because the legislation was not retroactive and its non-retroactivity has been confirmed by Ohio state courts, Payton would not have benefited even if he had raised the issue in state court.  Payton makes no argument in this case that the non-retroactivity of the state legislation violates his federal constitutional rights.[16] Accordingly, Payton's fifth ground for federal habeas relief is without merit.

## V. Conclusion and Recommendation

For the reasons stated above, Payton's grounds for relief are procedurally defaulted and/or without merit.  Accordingly, the undersigned recommends that Payton's Petition for writ of habeas corpus (Doc. 1) be **DENIED**.


Dated: June 19, 2014

Kathleen B. Burke
United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[16] A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.1988).